1  R. SCOTT ERLEWINE (State Bar No. 095106)
   DAVID M. GIVEN (State Bar No. 142375)
2  PHILLIPS, ERLEWINE & GIVEN LLP
   50 California Street, 35th Floor
3  San Francisco, California 94111
   Telephone: (415) 398-0900
4  Facsimile: (415) 398-0911
   Email: rse@phillaw.com
5         dmg@phillaw.com

6  Attorneys for Plaintiffs

7

8

9

10  JAMES BLACKMON, an individual;
    and JOHN GRAY, an individual,

11                          Plaintiffs,

12  v.

13
    GLENN TOBIAS a/k/a GLEN TOBIAS a/k/a
14  GLENN H. TOBIAS a/k/a GLEN H. TOBIAS,
    a/k/a GLENN HARVEY TOBIAS a/k/a GLEN
15  HARVEY TOBIAS, a/k/a GLENN H. TOBIAS,
    JR. a/k/a GLEN H. TOBIAS, JR., individually,
16  d/b/a ALDEBARRON MANAGEMENT
    COMPANY, d/b/a ALDERBARRON
17  MANAGEMENT COMPANY, d/b/a INFINITY
    ENTERTAINMENT INC., and d/b/a
18  INNERPLAY ENTERTAINMENT;
    ALDEBARRON MANAGEMENT
19  COMPANY, a corporation, a/k/a
    ALDERBARRON MANAGEMENT
20  COMPANY; INFINITY ENTERTAINMENT
    INC., a corporation; INNERPLAY
21  ENTERTAINMENT, a corporation; JANE
    ANDREAE a/k/a JANE F. ANDREA a/k/a
22  JANE FAY ANDREAE a/k/a JANE V.
    ANDREAE a/k/a  JANE VICTORIA
23  ANDREAE a/k/a VICTORIA ANDREAE a/k/a
    VICTORIA JANE ANDREAE a/k/a JANE
24  VICTORIA MUKTI ANDREAE a/k/a MUKTI
    ANDREAE a/k/a MUKTI ANDREAE
25  HABSBURG a/k/a JANE V. FAY a/k/a JANE F.
    FAY a/k/a ANDREAE JANE FAY a/k/a
26  VICTORIA RAYMER a/k/a JANE BERNER,

27

28  [caption continued next page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

11 2853

CASE NO.:

COMPLAINT FOR FRAUD, ETC.

DEMAND FOR JURY TRIAL   DMR

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

individually, and d/b/a ENCHANTED )
SUCCESS; and  ENCHANTED SUCCESS, an )
entity of unknown form, )
                                                    )
                    Defendants. )
_____ )

## I.     NATURE OF THE ACTION

1.     This civil action involves a successful confidence game run by defendants over three years that has resulted in defrauding plaintiffs out of more than $5.4 million.

2.     Defendants Glenn Tobias and Jane Andreae (both of them go by various aliases), individually and on behalf of all defendants, claimed that Andreae was a party to pending Swiss litigation which would, when successful, deem her to be heir to the estate – valued at more than US$1 billion – of her deceased husband.  Based on these representations, among others, Defendants induced plaintiff John Gray to loan monies to finance the lawsuit, promising to re-pay him with interest and to make certain investments in Gray's business and charitable endeavors from and upon receipt of the inheritance monies.  Defendants likewise induced plaintiff James Blackmon to financially support Defendants and their "team members" by promising to pay him substantial monies from the inheritance monies.  As plaintiffs advanced the monies, Defendants concocted a continuous stream of excuses and new problems needing new infusions of cash to remedy.  The Swiss court judgment was always a few more weeks – and a few more payments – away.

3.     In fact, Plaintiffs later discovered, there was no pending Swiss litigation, and no sizeable estate.  Moreover, Plaintiffs recently learned that Tobias previously plead guilty to his role in an earlier unrelated scam which defrauded victims out of nearly $28 Million.  The many twists and turns of the instant case (detailed below) were all lies, designed to induce Plaintiffs to pay out millions of dollars, which they did.  Plaintiffs now look to this Court for restitution, damages and justice.

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction of Plaintiff's pendent state-law causes of action under 28 U.S.C. § 1367 because these claims are so related to the federal clam that they

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

form part of the same case or controversy and derive from a common nucleus of operative facts. Depending upon the domicile of certain Defendants of unknown form or citizenship, this Court also may have jurisdiction pursuant to 28 U.S.C. § 1332.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this Complaint occurred in this District. Venue is also proper pursuant to 18 U.S.C. § 1965 in that Defendants transact their affairs in this District and/or the ends of justice requires that Defendants be brought before this Court.

6.     Intra-district assignment of this action to the San Francisco Division or the Oakland Division is appropriate pursuant to Civ. L.R. 3-2 as a substantial part of the events or omissions which give rise to the claims alleged herein occurred in Marin County and in the City and County of San Francisco, California.

## III.     PARTIES

7.     Plaintiff James Blackmon is an individual and is and at all times relevant was a resident of the City and County of San Francisco, California.

8.     Plaintiff John Gray is an individual and is and at all times relevant was a resident of Marin County, California.

9.     Defendant Glenn Tobias, a/k/a Glen Tobias a/k/a Glenn H. Tobias a/k/a Glen H. Tobias a/k/a Glenn Harvey Tobias a/k/a Glen Harvey Tobias a/k/a Glenn H. Tobias, Jr. a/k/a Glen H. Tobias, Jr.,  is an individual.  Upon information and belief, Tobias is a convicted felon, having plead guilty in the State of New York over a decade ago to his role in an unrelated scheme which defrauded one or more victims out of approximately $28 Million.

10.     Upon information and belief, Defendant Aldebarron Management Company, a/k/a Alderbarron Management Company ("Aldebarron"), is and at all relevant times was a corporation or a fictitious business name for Tobias.

11.     Upon information and belief, Defendant Infinity Entertainment, Inc. ("Infinity"), is and at all relevant times was a corporation or a fictitious business name for Tobias.

12.     Upon information and belief, Defendant Innerplay Entertainment ("Innerplay") is and at all relevant times was a corporation or a fictitious business name for Tobias.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                          3

13.     Upon information and belief, Tobias, Aldebarron, Infinity and/or Innerplay are alter egos of each other, there is and at all times relevant was a unity of interest and ownership among them, they commingled funds, they disregarded corporate formalities and separateness, the entities were undercapitalized, and it would constitute an injustice for this Court not to disregard the separateness of each.  In the alternative, upon information and belief, Aldebarron, Infinity and/or Innerplay are each a sole proprietorship of or trade name of Tobias and the acts and omissions of Aldebarron, Infinity and/or Infinity are acts and omissions of Tobias.

14.     Defendant Jane Andreae, a/k/a Jane Victoria Andreae a/k/a Victoria Jane Andreae, a/k/a Victoria Andreae, a/k/a Mukti Andreae, a/k/a Jane Victoria Mukti Andreae, a/k/a Mukti Andreae Habsburg, a/k/a Jane F. Andrea, a/k/a Jane Fay Andreae, a/k/a Jane V. Andreae, a/k/a Jane V. Fay, a/k/a Jane F. Fay, a/k/a Andreae Jane Fay, a/k/a Victoria Rymer, a/k/a Jane Berner, is an individual.  Upon information and belief, Andreae is and at all times relevant was a resident of Santa Fe County, New Mexico.

15.     Upon information and belief, defendant Enchanted Success ("Enchanted Success") is a corporation, a partnership, a limited liability company, or an unincorporated association.  Upon information and belief, defendant Andreae is a partner of Enchanted Success partnership, or if not, Andreae is engaged in business as a sole proprietor doing business as Enchanted Success.

16.     Upon information and belief, Andreae and Enchanted Success are the alter egos of each other, there is a unity of interest and ownership between them, they commingled funds, they disregarded corporate formalities and separateness, Enchanted Success was undercapitalized, and it would constitute an injustice for this Court not to disregard the separateness of each.  In the alternative, upon information and belief, Enchanted Success is a sole proprietorship of or trade name of Andreae and the acts and omissions of Enchanted Success are acts and omissions of Andreae.

Phillips, Erlewine & Given LLP
50 California Street
35ᵗʰ Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                                      4

17.     Plaintiffs are informed and believe that at all times alleged herein, each of the defendants was the agent, principal, affiliate, representative, co-venturer, co-conspirator, joint venturer, alter ego and/or partner of each of the other defendants, and in doing the acts hereinafter alleged, was acting within the scope of such relationship and with the permission, consent and/or ratification of his, her or its co-defendants.

18.     Defendants, and each of them, formed, conceived and operated a conspiracy against Plaintiffs, and each of them.  Said Defendants committed the acts alleged herein in furtherance of their common design.

## IV.     FACTS

### A.     Means of Fraudulent Representations.

19.     The representations by Defendants to Blackmon were principally made during numerous telephone conversations and some emails while Andreae was in Santa Fe, New Mexico (where she resides), Tobias was in the Los Angeles, California area (where he resides), and Blackmon was in San Francisco, California.  They were also made by Andreae when Blackmon met with her in New Mexico.  Some of the telephone calls and emails with Tobias were while Blackmon was in New Mexico.

20.     The representations by Defendants to Gray were principally made during numerous telephone conversations and some emails while Andreae was in Santa Fe, New Mexico, Tobias was in the Los Angeles, California area, and Gray was in Marin County, California.  Gray also met Andreae in person on a couple of occasions, both within this District and in New Mexico.  During most of 2008, Gray dealt mostly with Tobias regarding payments for the purported Swiss court case, almost always over the telephone and by email.  During latter 2008 and thereafter, Gray dealt with both Andreae and Tobias, usually communicating with them over the telephone and by email.

Phillips, Erlewine & Given LLP
50 California Street
35ᵗʰ Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    The Fraud Commences.**

    **(1)    Blackmon Is Targeted.**

21.    In or about 2005, Blackmon was introduced to Andreae by a mutual friend, Garry Muse.

22.    In or about early 2007, Muse told Blackmon that Andreae and her advisor (Tobias) had represented to Muse, among other things: that she [Andreae] would be receiving an inheritance of around $1 Billion once a Swiss court confirmed that she was the heir of her deceased husband, Peter Andreae, who was a member of a wealthy European family; that the financial and legal aspects of the Swiss case were being handled by Tobias, who held Andreae's power of attorney and who lived in the Los Angeles, California area; that Tobias would be paid "millions of dollars" for his services from those inheritance monies; and that Andreae had shown Muse a tax document stating that the estate was worth almost $1 Billion.  Muse told Blackmon that he was financially supporting Andreae in exchange for her promise to pay him $35 Million from the inheritance monies.

23.    In or about mid-2007, Blackmon traveled to New Mexico, and while there, met with Andreae.  Andreae confirmed all that Muse had told Blackmon.  Andreae also told Blackmon, among other things, that she was litigating a "high court" action pending in Zurich, Switzerland to claim her portion of her late husband's fortune, representing that her share was worth about $1 Billion; that the case was very close to being concluded in her favor and that the inheritance monies would be coming to her very soon; and that Muse was helping her out financially pending conclusion of the court case and that in exchange she had promised him $35 Million from the inheritance monies when received.  Andreae further told Blackmon that she would pay him millions of dollars out of the inheritance monies if he financially supported her

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

1   and her Swiss legal case pending receipt of such monies.  Andreae initially promised Blackmon

2   $1 Million, which quickly increased to promises of $10 Million, $20 Million and more.

3       24.     In or about mid-2007, Blackmon spoke with Tobias over the telephone, who

4   confirmed that he held power of attorney for Andreae and that he was handling the pending

5
6   Swiss case for her and was instructing her Swiss attorneys in that case, and who otherwise

7   confirmed all of what Muse and Andreae had represented to Blackmon.  Tobias also told

8   Blackmon, among other things, that the Swiss case had been pending in the Swiss courts for

9   approximately 10 years, that Andreae's deceased husband's family was opposing her efforts in

10  the Swiss case to obtain her share of the estate (which he confirmed was worth at least $1

11
12  Billion) and that the case was just about to be concluded in Andreae's favor.

13          **(2)     Blackmon Is Induced To Pay Over $800,000**

14      25.     Based on Andreae's and Tobias' representations, Blackmon spent approximately

15  five months in latter 2007 living in New Mexico financially supporting Andreae and the

16  purported Swiss case and generally tending to her expressed needs.  Blackmon paid for her living

17
18  expenses and paid to support her Swiss legal case and to support the other "team members"

19  (including Muse and two other individuals, Billy Clayton and Scott Allen) who were also

20  supporting her.  Andreae represented to Blackmon that she had agreed to pay Clayton millions of

21  dollars for his support.  She was living rent-free in a house at the time, having promised to pay

22  the house owner $10 Million from the inheritance monies.

23      26.     Upon information and belief, Muse, Clayton and Allen are also victims of

24
25  Defendants' fraud.  Everything that Muse initially told Blackmon about Andreae, Tobias and the

26  Swiss case, was later re-stated to him – many, many times – by Andreae and Tobias, in addition

27  to their other representations.

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                                    7

27.     In reliance upon Defendants' representations, during the period from approximately July 2007 through December 2009, Blackmon paid out monies totaling **$802,793.49** to or on behalf of defendants and the other team members. These included the following:

a.      Payments to or on behalf of Andreae totaling $524,277.85, directly by deposits into her bank accounts and by paying her credit card expenses, rent (after she moved to another house) and other expenses. Blackmon deposited the monies at a Bank of America branch in San Francisco, California into an account that Andreae and Enchanted Success maintained at Bank of America in Las Vegas, Nevada (held under the name "Enchanted Success"). When Andreae subsequently opened an account at Wells Fargo Bank in Santa Fe, New Mexico, Blackmon began transferring funds from his Wells Fargo account in San Francisco to her Wells Fargo account in New Mexico. He also wire-transferred monies to pay Andreae's rent from his bank in San Francisco, California to the owner of the New Mexico house Andreae was then renting who lived in Pennsylvania.

b.      Payments to three other "team members," including Clayton ($94,574.11), Muse ($64,300) and Allen (the caretaker of Andreae's house - $5,403.84) for their expenses in supporting Andreae pending receipt of the inheritance monies. Blackmon also paid Clayton's credit card expenses ($12,137.69) for the same reason. Andreae told Blackmon that she had agreed to pay Clayton millions of dollars for his support.

c.      In response to Tobias' and Andreae's representations that they also needed monies from Blackmon to finance the purported Swiss case, at their request, during the period from approximately August 2007 to October 2008, Blackmon made a series of loans totaling $102,000 to Tobias to finance and further support Andreae's Swiss case. These monies were deposited, on Tobias' instructions, into an account held in the name of "Infinity Entertainment"

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                    8

and/or "Glenn Tobias - Infinity Entertainment" located at Bank of America in Brentwood, California.   In addition, at least one of the fax transmissions that Tobias sent to Blackmon concerning one or more of these payments bore the fax header "InnerPlay Entertainment."

### C.   Gray Is Targeted and Becomes An Additional - And Much Larger - Victim

28.   In or about early January 2008, Gray was contacted by his friend Billy Clayton. Clayton told Gray that he had met a woman named Andreae and her advisor Tobias, and related to Gray the same the representations alleged in paragraph 22 above.   Clayton also told Gray that he and two other individuals, Blackmon and Muse, were financially supporting Andreae pending receipt of the inheritance monies and that in exchange she and Tobias had promised to pay each of them "millions of dollars" from those monies.

### (1)   Gray's Initial Loans.

29.   Clayton told Gray that Andreae and Tobias needed an additional $115,000 to pay attorneys' fees and court costs to conclude the Swiss court case.   Clayton said that if Gray loaned them these monies, Andreae and Tobias would repay the loan with interest when the inheritance monies were received, which was supposed to happen shortly.   Upon information and belief, Clayton was innocently acting at the direction of Defendants in making this request.

30.   Gray then spoke by telephone with Tobias, who made and confirmed to Gray the same representations as alleged in paragraph 24 above.   Tobias further told Gray that if he loaned the requested $115,000, Tobias and a company he represented he owned (Aldebarron Management Company), would repay the loan by February 1, 2008.   Based on those representations, Gray agreed to do so.

31.   In reliance upon the foregoing representations, on or about January 15, 2008 Gray wire-transferred $115,000 to Tobias to finance Andreae's Swiss case.   The monies – as were almost all of the monies involved in these events – were wired, on Tobias' instructions, either by

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

9

Gray or on his behalf (through family and friends from whom he borrowed some of the funds), to an account held in the name of Aldebarron Management Company located at Bank of America in Santa Monica, California ("Aldebarron Account").

32.     When the February 1st deadline passed without repayment, Tobias told Gray that there had been a short delay, that they needed a further loan from Gray of $45,000 to complete the Swiss case and that Gray would be repaid shortly upon completion of the Swiss case.  As a result, in early February 2008, Gray wire-transferred an additional $45,000 to Tobias' Aldebarron Account.

### (2)     Andreae's Representations to Gray

33.     Clayton told Gray that Andreae wanted to meet with him.  As a result, in or about early March 2008, while on a business trip, Gray met Andreae in New Mexico where she lived and spent more than a day speaking with her.  Andreae repeated and confirmed the representations that had been made to Gray by Tobias and Clayton as alleged above.  She also told Gray, among other things: that she was litigating a "high court" action in Zurich, Switzerland to claim her portion of her late husband's fortune, representing that her share was worth about $1 Billion; that she was just about to get her share of the estate because the case was just about over but that she needed additional monies to finance the case to conclusion; that her share of this fortune would make her the fourth wealthiest woman in the world; and that she wanted to invest $75 million of the proceeds from the estate in a chain of wellness and counseling centers which Gray wanted to open.  Andreae also confirmed to Gray that Clayton, Blackmon and Muse were helping her out financially pending conclusion of the court case and that in exchange she had promised each of them $25 Million from the inheritance monies when received.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                    10

1      34.    Everything that Clayton initially told Gray about Andreae, Tobias and the Swiss

2  case, was later re-stated to him – many, many times – by Andreae and Tobias, in addition to their

3  other misrepresentations.

**D.    Defendants' Pattern of Excuses**

4

5

6      35.    When Gray's initial two loans totaling $160,000 were not repaid by late February

7  2008 as promised, Tobias (and subsequently also Andreae) started offering Plaintiffs a series of

8  excuses for the delays in completing the Swiss case and why they needed more financial support

9  from Plaintiffs to pay for Andreae's legal counsel and other costs and expenses to complete the

10  Swiss case. They said this was necessary so they could, among other things, re-pay Gray, invest

11  monies in his projects and pay his promised share of the inheritance monies, and also so they

12  could pay Blackmon his promised share of the inheritance monies and re-pay loans he had made.

13  They told Plaintiffs, for example:

14

15           a.    That a purported illegitimate daughter of Peter Andreae's (Jane

16  Andreae's deceased husband) had emerged in the Swiss case and was claiming entitlement to a

17  portion of Peter Andreae's estate (which they said, if successful, would significantly reduce Jane

18  Andreae's share), and that expensive DNA testing was required to confirm that she was not his

19  daughter;

20

21           b.    That the DNA testing had proven inconclusive and that it would

22  have to be re-done in a different country at substantial additional cost; and

23

24           c.    That the DNA testing was still inconclusive and that Peter

25  Andreae's body would have to be exhumed and tested - and ultimately re-tested, again at great

26  expense, to confirm that he had had a vasectomy to disprove the purported daughter's paternity

27  claims.

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

36.     In reliance upon these and other representations and after being repeatedly promised by Tobias that, if Gray loaned further monies, they would be repaid with interest, Gray wired a series of payments to pay for the above matters, attorneys' fees and other costs and expenses to support the Swiss case. Specifically, during the period March 10, 2008 through November 2008, Gray transferred additional monies totaling $1,105,000 to Tobias' Aldebarron Account.

#### (1)     Defendants Hide Assets From the Swiss Courts

37.     Along the way, Plaintiffs complained to Tobias and Andreae about how long the Swiss case was taking to finish. Defendants responded with more excuses. For example, at one point Tobias told Plaintiffs that the Swiss court was in summer recess. At another point, Tobias and Andreae told Plaintiffs that they had won the case, transferred the inheritance monies from Switzerland to their account in the Bahama Islands, and subsequently to their account in the Cayman Islands, to hide these assets from the other Andreae family members opposed to Jane Andreae in the Swiss case and also for tax-avoidance purposes. Tobias and Andreae later told Plaintiffs that, when the purported illegitimate daughter surfaced in the Swiss case and when the other Andreae family members discovered the whereabouts of these monies, Tobias and Andreae had been forced to return these monies to Switzerland.

#### (2)     The Purported Bond

38.     To further assuage Plaintiffs, Tobias and Andreae told Plaintiffs that they had arranged for a venture called "Atlantis Resorts" in the Bahama Islands to issue a bond which would pay Plaintiffs (and the other individuals supporting the case) in the event the Swiss court case took too long to conclude. They said they needed monies from Gray to pay for the bond premium. At their request, Gray wired more monies to Tobias' Aldebarron Account. (Plaintiffs

have never seen nor been paid on this "bond," which Plaintiffs are now informed and believe was concocted and never existed.)

### (3)    Requests for Documentation

39.    As Plaintiffs' frustrations mounted, at various times, Plaintiffs requested that Tobias and Andreae provide them with documentation of the Swiss court proceedings and the litigation costs. Tobias replied that the Swiss lawyers had strictly instructed Andreae to keep all details of the case secret or they would resign and leave her without a lawyer. Tobias also told Plaintiffs that Andreae did not want anybody knowing the details of the case because her life would be threatened if it became public knowledge that she would inherit so much money.

### (4)    The Lichtenstein Vault, Hidden Assets And Court Sanctions

40.    As Plaintiffs became more insistent, Andreae contacted Plaintiffs by telephone sometime in or around 2009 and told them that she had found a key along with a note from her deceased husband stating that the key opened a bank vault in Liechtenstein containing cash and gold bars that could be used to immediately pay Plaintiffs back. Andreae said she would send her current husband to Liechtenstein to retrieve these assets, but that she needed money from Gray to pay for the expenses and for bank storage fees of $10,000 a year that had been accumulating for a decade. In response, Gray wired additional monies to Tobias' Aldebarron Account.

41.    Tobias and Andreae subsequently told Plaintiffs that, when Andreae's current husband opened the vault, there was no cash, but there was a lot of gold and about half a billion dollars in bearer bonds. They also told Plaintiffs that the bearer bonds had been issued by seven or so separate countries, and that money was needed from Gray to hire a broker who could sell them. As a result, Gray wired more money to Tobias' Aldebarron Account.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

42.     After further delays, Tobias and Andreae told Plaintiffs that the bearer bonds had expired and could not be redeemed unless they were included in Peter Andreae's estate. They represented that Jane Andreae would claim the value of the bonds in the Swiss court action and half of that value would be paid to Gray. They later told Plaintiffs, however, that the parties opposing Jane Andreae in the Swiss case (relatives of her deceased husband) had demanded half of the value of the bonds, that the Swiss court was now imposing substantial fines on Andreae due to her failure to earlier disclose these assets, that the Swiss judge had imposed fines on Andreae of about $300,000 that had to be paid before the judge would issue a ruling in her case, and that a mediation was being scheduled – and that larger amounts of money from Gray were needed to deal with it all. Increasingly desperate to have the case concluded, at their request Gray wired more money to Tobias' Aldebarron Account.

43.     Along the way, Andreae and Tobias also told Plaintiffs that the opposing side in the Swiss case had paid a member of Peter Andreae's family to testify against her, and that Andreae needed money to counter these allegations. At their request, Gray wired more money to them.

44.     Based on defendants' foregoing and other representations, during the first six months of 2009, Gray made a series of wire transfers to Tobias' Aldebarron Account of additional monies totaling $1,090,000.

### (5)     The Hidden Gold In India

45.     When Plaintiffs continued to complain about the delays and the lack of documentation, in or around mid-2009, Andreae promised to invest half of her inheritance in Gray's wellness centers and charitable works if he would continue supporting her case. (Andreae had made these representations earlier as well.) When Gray pressed for documentation, Andreae sent him a "promissory note," which, in addition to repayment of Gray's loans, promised Gray

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

14

1    50% of her financial estate at the completion of her court case which Andreae estimated would

2    occur by October 15, 2009.

3    46.    In response to Plaintiffs' further complaints, in or about mid-2009, Andreae and

4    Tobias announced that about $300 million in gold bars from Andreae's late husband's estate had

5    just been located in India.   They said the gold had not previously been considered part of the

6    estate because it had been pledged to someone in India but that this person had declined the gold

7    because the Swiss litigation regarding the estate was taking so long and that Andreae had hidden

8    the gold in India.   They told Plaintiffs that the Swiss court had found out about this gold, ordered

9    that it be included in the estate and that a "forensic team" needed to be sent to India to verify the

10   gold and to appraise it for inclusion in the Swiss case.

11

12   47.    Defendants requested that Gray loan them additional monies to pay for these and

13   other matters relating to the Swiss case.   Based on these and Defendants' other representations,

14   during the period July 13 through October 1, 2009, at their request, Gray wire-transferred

15   additional monies totaling **$2,357,000** to Tobias' Aldebarron Account to further support the

16   purported Swiss case.

17

18   **E.    Gray Transfers A Total Of $4.6 Million To The Aldebarron Account**

19   48.    All told, as of October 1, 2009, Gray wire transferred monies totaling **$4,612,700**

20   to Tobias' Aldebarron account – all in reliance upon the representations made to him by

21   Defendants.   This amount, plus interest thereon at 10% per annum accruing from each transfer

22   date through June 4, 2011, totals **$5,611,834**, with interest continuing to accrue.   Had Gray

23   known that Defendants' representations were false, he would not have transferred these monies.

24

25   **F.    Miscellaneous Payments To Andreae**

26   49.    Along the way, beginning in mid-2008, Andreae would frequently call Gray and

27   request relatively small sums, claiming that she had no money and needed the cash for living

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                                      15

1    expenses pending receipt of the inheritance monies from her Swiss case.  Andreae said that she

2    had been bilked out of $3 million she had received from the U.S. portion of her late husband's

3    estate (who had died in the State of Nevada).  Given that repayment of Gray's loans was

4    dependent upon Andreae's success in the Swiss case, it seemed necessary to Gray to keep her

5    afloat.  As a result, over the period from June 6, 2008 to February 2, 2009, at Andreae's request,

6    Gray wire transferred from California to Andreae's account at Bank of America in Las Vegas,

7    Nevada ("Andreae Account"), which was held in the name of "Enchanted Success," a series of

8    small payments totaling approximately $41,475.  These monies, plus interest thereon at 10% per

9    annum accruing from each transfer date through June 4, 2011, total $52,582, with interest

10   continuing to accrue.  Had Gray known that Defendants' representations  were false, he would

11   not have given her these monies.

12

13

14              **G.     Defendants Demand Millions More From Plaintiffs**

15        50.    In or about the fall of 2009, Andreae and Tobias announced to Plaintiffs that the

16   forensic team in India had discovered that the identification numbers on the gold bars had been

17   sanded off, which they said placed Andreae in legal jeopardy of more fines from the Swiss court,

18   complicating her defense and making it more expensive to litigate the Swiss case.  They told

19   plaintiffs that they needed another $1.8-$2.0 Million or so from Plaintiffs to pay for: the Swiss

20   civil attorneys, Swiss criminal counsel to defend Andreae over charges that she had hidden

21

22   assets from the court, payment of court sanctions, and to otherwise complete the Swiss civil case.

23        51.    By February 2010, this requested amount had risen to $2.8 Million.  At Gray's

24   request, on or about February 17, 2010, Tobias sent Gray by email a letter enclosing a breakdown

25   of what he represented to be the intended uses for the requested additional $2.8 Million.  This

26

27   breakdown listed the following: payment of Swiss High Court sanctions, Court costs, refreshed

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

1  retainer for the civil Swiss attorneys, monies for a Swiss criminal attorney, investigator fees, a $1

2  Million contingency fund and monies to cover Andreae's living expenses.

3  **H.    Promissory Note**

4
5  52.    In response to Andreae and Tobias' continuing demands for additional monies,

6  Gray requested that they first provide him with documentation for the loans he had already made.

7  In January 2010, Defendants sent Gray a promissory note which only included the last transfer he

8  had made in the amount of $740,000. The promissory note listed Tobias, Aldebarron and

9  Andreae as the makers. The promissory note specifically represented that "the funds advanced

10  are for the express purpose to pay the legal expenses and court fees required to settle an ongoing

11
12  legal case in Switzerland for the benefit of Victoria Jane Andreae represented by the Makers as

13  now pending." This document was sent to Gray by email.

14  53.    When Gray protested that this promissory note only covered a fraction of the loans

15  that he had made, on or about February 17, 2010, Andreae and Tobias sent him another

16  promissory note in his favor (hereafter "Promissory Note") in which they listed most of his prior

17
18  payments for the Swiss Case ($4,343,200), plus the additional $2.8 million they were now

19  requesting, promising to repay all monies at a 10% rate of interest upon the conclusion of the

20  Swiss court proceedings. The Promissory Note listed Tobias, Aldebarron and Andreae as the

21  makers. Attached hereto as Exhibit A is a true and correct copy of said Promissory Note. (The

22  Promissory Note fails to include three of the payments which Gray made, including $75,000 on

23
24  or about June 25, 2008; $101,000 on or about May 7, 2009 and $93,500 on or about May 27,

25  2009.) This Promissory Note was sent to Gray by FedEx.

26  **I.    Defendants' Continuing Demands To Provide Additional Monies**

27  54.    Throughout the period 2010 to date, Defendants continued to exert pressure on

28  Plaintiffs to loan the further monies being demanded. For example, Defendants have regularly

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                          17

1  sent Gray emails representing the status of the Swiss case and the need for immediate funding

2  from Gray and people he knows. In October 2010, Tobias sent Gray an e-mail representing that

3  the Swiss estate now had a value of $4.843 Billion (exclusive of the "Indian inventory [of gold]"

4
5  and representing that Gray would be paid about $2 Billion of it, and that the others would receive

6  staggering amounts as well: Tobias ($306 Million); Blackmon ($100 Million); Muse ($100

7  Million) and Clayton ($306 Million). Tobias represented that Defendants needed to receive

8  additional monies from Plaintiffs to conclude the Swiss case and obtain this recovery. In March

9  2011, Tobias sent another email to Gray representing that the estate was now worth $6.897

10  Billion, factoring in the "Indian inventory [*i.e.,* gold]," and representing that Gray's share would

11
12  be $3 Billion Dollars, but that Gray would first need to pay more monies so they can complete

13  the purported Swiss case.

14  55.  Most recently, in May 2011, and again in early June 2011, Tobias sent Gray

15  several emails updating him on the status of the Swiss case, emphasizing the urgency to get

16  additional monies from Gray, and representing that the amount now needed was an additional

17
18  $3.6 Million due to exchange rate reversals.

19  **J.    The Fraud Is Uncovered**

20  56.  Every material representation made by Defendants, and each of them, to Plaintiffs,

21  and each of them, was false.

22  57.  In or about 2010, Gray retained a private investigator who thereafter investigated

23
24  Defendants and the purported Swiss case. He determined that Defendants' representations to

25  plaintiffs were materially false, to wit:

26  a.    That Defendants' representations about the purported Swiss case

27  concerning Peter Andreae's estate were false, since he found that no such litigation ever existed;

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                                  18

b.      That Defendants' representations that they needed money to exhume Peter Andreae's body to have it tested and examined for evidence of a vasectomy were false, since he found that Peter Andreae's body was cremated in 1997 in Switzerland;

c.      That Defendants' representations that Peter Andreae's was worth One Billion Dollars or more were false, since he found that the entire estate when Peter Andreae died was worth less than \$2 Million; and

d.      That Defendants' representations that Andreae had pending claims against the her now-deceased husband's estate were false, since he found that Andreae entered into a settlement regarding her share of the estate in 1997.

58.     Upon information and belief, all other material representations made to Plaintiffs by Defendants were also false.

59.     Based on Plaintiffs' discovery of the fraud, Gray has not paid the additional \$2.8 Million called for under the Promissory Note.

### K.      Tobias' Prior Fraud Conviction

60.     Plaintiffs have also learned that in the mid-1990's Tobias, along with other individuals, plead guilty to felony criminal charges in the State of New York for defrauding an island republic in the Pacific out of approximately \$28 Million.

### L.      Damages

61.     Plaintiffs have never been re-paid any of the monies which they paid, loaned and/or transferred to and/or on behalf of Defendants or the other team members as alleged herein.

62.     As a result of the unlawful conduct of Defendants, and each of them, alleged above, Gray has been damaged in amounts not yet fully ascertained, but within the jurisdictional limits of this Court, including but not limited to, the following:

Phillips, Erlewine & Given LLP
50 California Street
35ᵗʰ Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                    19

a.      Loss of the monies he transferred to the Aldebarron Account ($4,612,700), plus interest thereon calculated at 10% per annum running from the date of each transfer, totaling $5,611,834 through June 4, 2011, with interest continuing to accrue;

b.      Loss of the monies he transferred to Andreae and Enchanted Success ($41,475), plus interest thereon calculated at 10% per annum running from the date of each transfer, totaling $52,582 through June 4, 2011, with interest continuing to accrue;

c.      Emotional and physical distress, anxiety, humiliation and loss of reputation in the amount of at least $1,000,000; and

d.      Other consequential losses in the amount of at least $3,000,000.

63.     As a result of the monies Blackmon has been bilked out of by Defendants,  he has lost his life savings, his home in San Francisco has recently been lost in foreclosure, and he owes substantial monies to creditors.

64.     As a result of the unlawful conduct of Defendants, and each of them, alleged above, Blackmon has been damaged in amounts not yet fully ascertained, but within the jurisdictional limits of this Court, including but not limited to, the following:

a.      Loss of the monies he transferred to and/or paid on behalf of Defendants ($802,793), plus interest thereon calculated at 10% per annum running from the date of each transfer, totaling $1,010,248 through May 31, 2011, with interest continuing to accrue;

b.      Emotional and physical distress, anxiety, humiliation and loss of reputation in the amount of at least $1,000,000; and

c.      Other consequential losses in the amount of at least $3,000,000.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                          20

1

2

### FIRST CLAIM FOR RELIEF
### <u>Fraud (Intentional Misrepresentation)</u>

3

4        65.    Plaintiffs re-allege and incorporate herein Paragraphs 1-64 above.

5        66.    Defendants, and each of them, made numerous material factual representations to

6     Plaintiffs, and each of them, with knowledge that the representations were false.  For example,

7     Defendants falsely represented that Andreae was a party to pending Swiss litigation regarding her

8     purported right to a share of the estate of her late husband; that the estate and Andreae's share

9     was worth $1 Billion or more; that Defendants needed monies to pay attorneys' fees, costs and

10    expenses necessary to prosecute such litigation; that a purported illegitimate daughter of Peter

11

12    Andreae's (Jane Andreae's deceased husband) had emerged in the Swiss case and was claiming

13    entitlement to a portion of Peter's Andreae's estate and that expensive DNA testing was required

14    to confirm that she was actually not his daughter; that the DNA results had proved inconclusive;

15    that Defendants needed money to exhume Peter Andreae's body to have it tested and to be

16    examined for evidence of a vasectomy; that there was a bank vault in Europe belonging to the

17

18    estate which contained bearer bonds totaling hundreds of millions of dollars; that Defendants had

19    arranged for issuance of a bond in the amount of $100 Million in favor of Plaintiffs; that there

20    was gold in India belonging to the estate that was valued at several hundred million dollars; and

21    that Defendants needed monies from Plaintiffs to pay for the associated costs, expenses,

22    attorneys' fees and court sanctions and also to financially support Andreae's living expenses and

23    to pay expenses to support the other team members pending receipt of the inheritance monies.

24

25       67.    The above representations – along with dozens of others – were false, and

26    Defendants knew they were false at the time that each communicated the false representations to

27    Plaintiffs.

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

68.     Defendants, and each of them, communicated these false representations to Plaintiffs with an intent to induce Plaintiffs, and each of them, to rely upon them by transferring, loaning and/or paying monies to and/or on behalf of Defendants and the other team members. Plaintiffs justifiably relied upon these false representations by, among other things, transferring, loaning and/or paying the monies described in paragraphs 27-48.

69.     As a proximate result of said Defendants' unlawful conduct, Plaintiffs have each suffered damages in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this Court, including but not limited to, the damages and amounts alleged in paragraphs 61-64, for which Defendants are each jointly and severally liable.

70.     The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

## SECOND CLAIM FOR RELIEF
### Fraud (False Promise)

71.     Plaintiffs re-allege and incorporate herein Paragraphs 1-64 above.

72.     Defendants, and each of them, made numerous promises to Plaintiffs, and each of them, which when made they did not intend to perform. For example, said Defendants promised to re-pay plaintiff Gray for his loans, with interest; promised to pay Gray a significant portion of the inheritance monies, including approximately half of the value of the estate; promised that they would contribute $75 Million from the inheritance monies to finance a series of wellness centers which Gray intended to build, all once the purported Swiss litigation regarding the estate was closed. Said Defendants also likewise promised to pay Blackmon millions of dollars, and at one point $100 Million, from the inheritance monies, and promised to re-pay Blackmon for his loans, with interest, once the purported Swiss litigation regarding the estate was closed.

73.     Defendants never had any intention to honor these promises.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

74.     Said Defendants made these promises to Plaintiffs with an intent to induce reliance on the part of Plaintiffs.  Plaintiffs justifiably relied upon said promises and performed their part of the transaction or series of transactions by transferring, loaning and/or payment of the monies, except where excused from doing so.  Defendants did not perform their promises.

75.     As a proximate result of said Defendants' unlawful conduct, Plaintiffs have each suffered damages in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this Court, including but not limited to, the damages and amounts alleged in paragraphs 61-64 hereof, for which Defendants are each jointly and severally liable.

76.     The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

### THIRD CLAIM FOR RELIEF
### Fraud in the Inducement

77.     Plaintiffs re-allege and incorporate herein Paragraphs 1-63 above.

78.     Defendants, and each of them, made numerous promises to Plaintiffs, and each of them, with knowledge that the representations were false and with the intent to induce Plaintiffs to rely upon such representations by paying, loaning and/or transferring monies to or for the benefit of Defendants.  These include, but are not limited to the representations, set forth in paragraphs 66 and 72 above.

79.     Plaintiffs, and each of them, justifiably relied upon these false representations and were, in fact, induced by these false representations to enter into various contractual agreements, including, without limitation, the Promissory Note and all oral, written and/or implied agreements between Gray and Defendants regarding Gray's loans and financing of the alleged Swiss litigation and his financial support of Andreae; and the oral, written and/or implied

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                           23

agreements between Blackmon and Defendants regarding Blackmon's loans and financing of the alleged Swiss litigation and his financial support of said defendants and the other "team members."

80.     As a proximate result of Defendants' unlawful conduct, Plaintiffs have each suffered damages in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this Court, including but not limited to, the damages and amounts alleged in paragraphs 60-63 hereof, for which Defendants are each jointly and severally liable.

81.     The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

## FOURTH CLAIM FOR RELIEF
### Conversion

82.     Plaintiffs re-allege and incorporate herein Paragraphs 1-80 above.

83.     Defendants, and each of them, intentionally took possession and control of monies belonging to Plaintiffs, and each of them, based upon fraudulent conduct and without obtaining Plaintiffs' knowing consent, and have never returned such monies or any portion thereof, and thereby converted such monies.

84.     As a proximate result of Defendants' unlawful conduct, Plaintiffs have each suffered damages in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this Court, including but not limited to, the damages and amounts alleged in paragraphs 61-64 hereof, for which Defendants are each jointly and severally liable.

85.     The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

24

## FIFTH CLAIM FOR RELIEF
**Breach of Oral, Written And Implied-In-Fact Contract**

86.    Plaintiff Gray re-alleges and incorporates herein Paragraphs 1-61 above.

87.    Defendants, and each of them, on the one hand, and Gray, on the other hand, entered into an agreement evidenced, at various times and to different degrees, by written documents, by spoken communications and by conduct.

88.    Gray agreed to provide funds to finance litigation in Switzerland regarding Andreae's share of the estate of the late Peter Andreae.  In return, Defendants, and each of them, agreed to re-pay Gray, plus interest at the rate of 10 percent per annum accruing from each transfer date, upon conclusion of the Swiss litigation.

89.    There never was any pending Swiss litigation regarding the estate of Peter Christoph Andreae. The estate of Peter Christoph Andreae closed years earlier.

90.    Defendants, and each of them, breached these obligations by failing to re-pay the monies that Gray advanced, or any portion thereof, and further by failing to pay interest thereon.

91.    As a result of Defendants' breaches, Plaintiffs have each suffered damages in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this Court, including but not limited to, the damages and amounts alleged in paragraphs 61-64 hereof, for which Defendants are each jointly and severally liable.

92.    Plaintiff Gray is entitled to recover his reasonable attorneys' fees, investigation and litigation-related expenses in the amount of at least $500,000.

## SIXTH CLAIM FOR RELIEF
**Breach of Written Contract (Promissory Note)**

93.    Plaintiff Gray re-alleges and incorporates herein Paragraphs 1-61 above.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                          25

94.     On or about February 17, 2010, Defendants, and each of them, executed a Promissory Note in favor of Gray.  The Promissory Note is attached hereto as Exhibit A and its terms are incorporated herein by reference as if fully set forth.   The Promissory Note catalogued many of Gray's loans to Defendants totaling $4,343,200, requested an additional payment of $2.8 million, and promised to re-pay all such monies at a 10% rate of interest accruing from each transfer date upon the closing of the Swiss court proceedings regarding the estate of Peter Christoph Andreae.

95.     The Promissory Note provides that, in the event of default, Gray shall have the right to accelerate and make the entire unpaid balance of principal and interest immediately due and payable.   The Promissory Note defines default to include "failure to make any payment when due under the terms of this Note"; or  "the violation of other term, condition or promise of this Note."

96.     Defendants, and each of them, have defaulted on the Promissory Note.  The Swiss case, as represented by Defendants, never existed, and their promise that it did is a violation of the Promissory Note and constitutes a default.   Alternatively, the estate of Peter Andreae was settled many years ago, and there is no pending Swiss litigation regarding his estate. Consequently, payment is due to Gray from Defendants and they have defaulted and all monies advanced are due and payable, plus interest.

97.     Defendants, and each of them, have breached the Promissory Note by failing to re-pay any or all monies advanced, plus interest.

98.     As a result of said breaches, Plaintiff Gray has been damaged in the sum of $4,343,200, plus interest thereon at 10% per annum from the date of each transfer, totaling $5,280,388 through June 4, 2011, with interest continuing to accrue, for which Defendants are jointly and severally liable.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                                   26

99.     Plaintiff is entitled to recover his reasonable attorneys' fees, investigation and litigation-related expenses in the amount of at least $500,000.

### SEVENTH CLAIM FOR RELIEF
### Breach of Oral, Written And Implied-In-Fact Contract

100.    Plaintiff Blackmon re-alleges and incorporates herein Paragraphs 1-60 and 62-63 above.

101.    Defendants, and each of them, on the one hand, and Blackmon, on the other hand, entered into an agreement evidenced, at various times and to different degrees, by written documents, by spoken communications and by conduct.

102.    Blackmon agreed to provide funds to finance litigation in Switzerland regarding Andreae's share of the estate of the late Peter Christoph Andreae and to financially support defendants and the other team members in exchange for re-payment of such monies and/or payment of a portion of the inheritance monies.

103.    There never was any pending Swiss litigation regarding the estate of Peter Christoph Andreae. The estate of Peter Christoph Andreae closed years earlier.

104.    Defendants, and each of them, breached these obligations by failing to re-pay the monies that Blackmon advanced, or any portion thereof, and further by failing to pay interest thereon.

105.    As a result of defendants' breaches, Blackmon has been damaged in the sum of $802,793, plus interest thereon at 10% per annum accruing from each transfer date through May 31, 2011, totaling $1,010,248, with interest continuing to accrue, for which Defendants are jointly and severally liable.

106.    Plaintiff is entitled to recover his reasonable attorneys' fees, investigation and litigation-related and expenses in an amount of at least $500,000.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                                  27

## EIGHTH CLAIM FOR RELIEF
## RICO Violation (18 U.S.C. § 1962©)

107.    Plaintiffs re-allege and incorporate herein Paragraphs 1-80 above.

108.    Defendants, and each of them, have violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically, the provision codified at 18 U.S.C. § 1962(c).

109.    Defendants operate a RICO enterprise.  Andreae and Tobias, together with each of the other defendants with whom they are separately related, have formed an association in fact, and upon information and belief all Defendants are associated with the criminal enterprise. Defendants had and have a pre-existing and ongoing relationship which extends beyond their unlawful behavior.  The RICO enterprise has an identifiable structure, in that Andreae and Tobias, and each of their related companies, are based on information and belief, partners in the enterprise of defrauding people and also partners in other activities, lawful and unlawful.  Upon information and belief, Andreae and Tobias are, and at all times relevant have been, in communication with each other discussing and plotting strategies for the scheme and carrying it out in concert with each other for joint benefit.  Upon information and belief, Andreae and Tobias have shared the fruits of their scheme, including the monies which Plaintiffs paid them. The enterprise is also embodied in the fraudulent scheme detailed in this complaint.  The RICO enterprise may, upon information and belief, also operate under the name Aldebarron Management Company, Infinity Entertainment, Innerplay Entertainment and/or Enchanted Success.  The criminal enterprise operates in interstate commerce, as evidenced above.

110.    Andreae and Tobias, separately and together with each of the other Defendants with whom they are separately related, have jointly engaged in a pattern of racketeering activity in that each has committed two or more RICO predicate acts within the last ten (10) years. Specifically, and without limitation, Andreae and Tobias have each, within the last ten (10) years,

Phillips, Erlewine & Given LLP
50 California Street
35ᵗʰ Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                    28

committed two or more acts of wire fraud in violation of 18 U.S.C. § 1343, and upon information and belief, one or both Andreae and Tobias have traveled interstate to facilitate the scheme in violation of 18 U.S.C. 1952.

111.    Plaintiffs are not the only victims of said Defendants' criminal enterprise. On information and belief, there are other victims of Defendants' fraudulent conduct.

112.    Due to Defendants' operation of their criminal enterprise and/or their commission of crimes which are predicate acts under the RICO statute, Plaintiffs, and each of them, have been harmed and injured in at least the amounts set forth in paragraphs 61-64 above, for which Defendants are jointly and severally liable.

113.    The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

114.    Plaintiffs, and each of them, are each entitled to recover treble damages against Defendants, and each of them, totaling at least $17,000,000 for Plaintiff Gray and at least $3,145,000 for Plaintiff Blackmon, for which Defendants are jointly and severally liable.

115.    Plaintiffs are also entitled to recover reasonable attorneys' fees, investigation and litigation-related expenses in an amount of at least $500,000.

## NINTH CLAIM FOR RELIEF
### Conspiracy To Violate RICO (18 U.S.C. § 1962(d))

116.    Plaintiffs re-allege and incorporate herein Paragraphs 1-81 and 108-111 above.

117.    Defendants, and each of them, have violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically, the provision codified at 18 U.S.C. § 1962(d), in that each has conspired with the other to violate RICO (specifically, to violate 18 U.S.C. § 1962(c)).

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

118.    Due to the conspiracy of defendants, and each of them, to violate the RICO statute, Plaintiff Gray has been damaged in an amount of not less than $4,654,175, plus interest thereon at 10% per annum from each transfer date through June 4, 2011, totaling $5,659,315, with interest continuing to accrue.

119.    Due to the conspiracy of Andreae and Tobias to violate the RICO statute, Plaintiff Blackmon has been damaged in an amount of not less than $802,793, plus interest thereon at 10% per annum accruing from each transfer date through May 31, 2011, totaling $1,010,248 and interest continuing to accrue.

120.    The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

121.    Plaintiffs are also entitled to recover reasonable attorneys' fees, investigation and litigation-related expenses of at least $500,000.

## TENTH CAUSE OF ACTION
## Violation of the Unfair Competition Law

122.    Plaintiffs re-allege and incorporate herein Paragraphs 1-81 and 108-118 above.

123.    In engaging in the conduct and activities pled herein, defendants, and each of them, engaged in unlawful, unfair and/or fraudulent business acts or practices in violation of the California Unfair Competition Law (codified at Business & Professions Code § 17200 *et seq.*).

124.    As a result of the acts or practices of unfair competition perpetrated by said defendants, Plaintiffs have each been harmed in the amounts alleged in paragraphs 60-63.

125.    Defendants, and each of them, are holding assets which belong to plaintiffs or which have been purchased with money wrongfully obtained from plaintiffs.

Phillips, Erlewine & Given LLP
50 California Street
35ᵗʰ Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                    30

126.     Injunctive relief is necessary to maintain the status quo as it existed prior to the start of this dispute.

127.     Injunctive relief is necessary to protect the Court's jurisdiction and judgment, to preserve disputed monies and assets, and to preserve the possibility of equitable remedies.

128.     Injunctive relief is necessary because legal remedies are inadequate or insufficient to compensate Plaintiffs for the injuries each has sustained prior to the filing of this Complaint and for the injuries which each will continue to sustain after the filing of this Complaint.

129.     Injunctive relief against Defendants, and each of them, is appropriate because the balance of the hardships and equities favor Plaintiffs.

130.     Injunctive relief against Defendants, and each of them, will be in the public interest.

131.     Injunctive relief against said Defendants is appropriate because Plaintiffs will establish that each has a likelihood of success on the merits.

132.     The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

133.     Plaintiffs are entitled to recover their reasonable attorneys' fees, investigation and litigation-related expenses in the amount of at least $500,000.

## ELEVENTH CLAIM FOR RELIEF
### Imposition of Constructive and/or Resulting Trust

134.     Plaintiffs re-allege and incorporate herein Paragraphs 1-81 and 108-133 above.

135.     The Court should impose a constructive and/or resulting trust on behalf of Plaintiffs, and each of them, upon and over all monies and assets which are rightfully the property of said Plaintiffs and/or which have been purchased by money wrongfully obtained from

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

31

Plaintiffs, but which are currently under the possession, custody or control of Defendants, and each of them, due to the fraud, breach of contract and/or other unlawful conduct of Defendants, and each of them.

## TWELFTH CLAIM FOR RELIEF
### Unjust Enrichment

136.    Plaintiffs re-allege and incorporate herein Paragraphs 1-81 and 108-133 above.

137.    Due to their unlawful conduct, Defendants, and each of them, have received benefits to which each is not entitled at the expense of Plaintiffs, and each of them.

138.    Due to the unjust enrichment of said Defendants, Plaintiffs have each been harmed in the amounts alleged in Paragraphs 61-64 above.

139.    The foregoing conduct by Defendants, and each of them, was fraudulent, malicious and oppressive, and each Plaintiff is entitled to recover punitive damages in the amount of at least $10,000,000 against each of the Defendants, respectively.

## THIRTEENTH CLAIM FOR RELIEF
### Injunctive Relief

140.    Plaintiffs re-allege and incorporate herein Paragraphs 1-81 and 108-133 above.

141.    Injunctive relief against Defendants, and each of them, is necessary and appropriate for the reasons alleged in Paragraphs 125-131.

## FOURTEENTH CLAIM FOR RELIEF
### Accounting

142.    Plaintiffs re-allege and incorporate herein Paragraphs 1-141 above.

143.    Plaintiffs hereby demand an accounting of all the whereabouts and disposition of all monies that were loaned, paid and/or transferred by Plaintiffs to and/or on behalf of Defendants, and each of them.   Defendants have sole custody and control of the documents and records demonstrating such matters.

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

32

1

**PRAYER**

2    WHEREFORE, Plaintiffs James Blackmon and John Gray, and each of them, pray

3    for relief against Defendants, and each of them, as follows:

4

5    A.    For general damages in favor of Plaintiff Gray, including but not limited to

6    monies paid by Gray, along with lost interest thereon, in the amount of at least $4,654,175, plus

7    interest at the rate of 10% per annum from the date of each transfer, totaling $5,611,834 through

8    June 4, 2011, with interest continuing to accrue; plus damages for emotional and physical

9    distress, anxiety, humiliation and loss of reputation in the amount of at least $1,000,000; plus

10   additional losses in the amount of at least $3,000,000; and that each of the foregoing damages be

11

12   trebled.

13   B.    For general damages in favor of Plaintiff Blackmon, including but not limited to

14   monies paid by Blackmon, along with lost interest thereon, in the amount of at least $802,793,

15   plus interest at the rate of 10% per annum from the date of each transfer, totaling $1,010,248

16   through May 31, 2011, with interest continuing to accrue; plus damages for emotional and

17   physical distress, anxiety, humiliation and loss of reputation in the amount of at least $1,000,000,

18

19   plus additional losses in the amount of at least $3,000,000, and that each of the foregoing

20   damages be trebled.

21   C.    That each Plaintiff, respectively, recover punitive damages in the amount of at

22   least $10,000,000 against each of the Defendants, respectively.

23

24   D.    That Defendants, and each of them, be ordered to account to Plaintiffs for, and

25   disgorge, all monies that were paid over by Plaintiffs as set forth above, and/or to disgorge all

26   profits Defendants have derived, by reason of the unlawful acts complained of above.

27

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.

33

E.      Disgorgement or restitution of all sums obtained by fraud in the inducement, plus interest thereon, in the amounts of at least $5,564,416 for Plaintiff Gray and $1,010,248 for Plaintiff Blackmon, with interest continuing to accrue.

F.      Rescission, abrogation, cancellation or avoidance of all contracts obtained by fraud in the inducement, including, without limitation, the Promissory Note and all oral, written and/or implied-in-fact agreements among Plaintiffs, and each of them, and Defendants, and each of them.

G.      The entry of an order or decree mandating that, for the duration of this civil action, (a) all persons holding monies which are alleged to have been paid by Plaintiffs to and/or on behalf of Defendants, and each of them, or affiliated persons, (b) all persons holding assets which are alleged to have been purchased with monies which Plaintiffs paid to or on behalf of Defendants and/or (c) all Defendants holding monies or assets in an amount equal to or less than the amount in controversy in this civil action, be prohibited from withdrawing, allowing the withdrawal of, wiring, alienating or other transferring said funds or assets absent Court Order;

H.      An order, decree or judgment mandating that all persons holding monies which were paid by Plaintiffs to and/or on behalf of Defendants, and each of them, and all persons holding assets which were purchased with monies which plaintiffs paid to and/or on behalf of Defendants, and each of them, are required to turn over all said monies or assets to Plaintiffs;

I.       The imposition of a constructive and/or resulting trust for the benefit of Plaintiffs over all monies which were transferred, paid and/or loaned by Plaintiffs to and/or on behalf of defendants, and each of them, and/or over all assets which were purchased with monies which plaintiffs so paid.

J.       Attorneys' fees, investigation and litigation-related expenses to the extent allowable by law, in the amount of at least $500,000;

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

1    K.    Costs, to the extent allowable by law;

2    L.    Pre-judgment interest at the rate of 10% per annum, to the extent allowable by

3    law;

4    M.    Post-judgment interest, to the extent allowable by law; and/or

5    N.    Such other or further relief as the Court deems just and proper.

6

7    Dated: June 10, 2011                    PHILLIPS, ERLEWINE & GIVEN LLP

8

9    By: _____
                                             David M. Given
10                                           Attorneys for Plaintiffs

11

                            **JURY DEMAND**
12

13   Plaintiffs, and each of them, demand trial by jury on all issues so triable.

14

15   Dated: June 10, 2011                    PHILLIPS, ERLEWINE & GIVEN LLP

16

17   By: _____
                                             David M. Given
18                                           Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

Phillips, Erlewine & Given LLP
50 California Street
35th Floor
San Francisco, CA 94111
(415) 398-0900

COMPLAINT - Case No.                                                          35

# EXHIBIT A

## Promissory Note

<u>Amount</u>: $7,143,200.00                                      <u>Date</u>: February _17_, 2010

For value received as of the date of this agreement along with those funds anticipated to be delivered upon execution of this agreement, the undersigned, Glen Tobias representing Alderbarron Management Company and Victoria Jane Andreae, jointly and severally ("Maker") promises to pay to John Gray and his successors, the cumulative principal sum of $7,143,200.00 (USD), plus interest at a rate of 10% per annum calculated from the date of each transfer. This sum is the aggregate of 25 loans transferred between 1/15/2008 and 10/11/2008, and the $2,800,000.00 (USD) transfer anticipated herein to Alderbarron Management Company (i.e. "Anticipated Funds Transfer").

The funds advanced as of the date of this agreement were requested by Maker for the purpose of supporting the probate estate settlement of Peter Christoph Andreae, now subject to open arbitration in the Swiss high court (Zürich) for the spousal benefit of Victoria Jane Andreae (i.e. "the Court Matter").

The Anticipated Funds Transfer is to be utilized according to the Application of Funds statement as incorporated by reference. The requested Anticipated Funds Transfer, now required to successfully bring the Court Matter to final resolution, is hereby acknowledged as demonstration of Gray's support to the Maker.

<u>Itemization of Funds Transferred and To Be Transferred</u>

| Transfer No. | Transfer Date | Amount |
|---|---|---|
| 1 | 1/15/08 | $115,000.00 |
| 2 | 2/8/08 | $45,000.00 |
| 3 | 3/10/08 | $75,000.00 |
| 4 | 4/10/08 | $50,000.00 |
| 5 | 5/6/08 | $35,000.00 |
| 6 | 5/27/08 | $45,000.00 |
| 7 | 6/8/08 | $20,000.00 |
| 8 | 6/17/08 | $50,000.00 |
| 9 | 6/24/08 | $60,000.00 |
| 10 | 7/3/08 | $60,000.00 |
| 11 | 7/14/08 | $50,000.00 |
| 12 | 7/30/08 | $70,000.00 |

1 of 3

| Transfer No. | Transfer Date | Amount |
|---|---|---|
| 13 | 9/12/08 | $30,000.00 |
| 14 | 9/29/08 | $45,000.00 |
| 15 | 10/1/08 | $55,000.00 |
| 16 | 10/9/08 | $85,000.00 |
| 17 | 11/30/08 | $200,000.00 |
| 18 | 1/12/09 | $296,000.00 |
| 19 | 3/9/09 | $124,000.00 |
| 20 | 4/5/09 | $88,000.00 |
| 21 | 4/28/09 | $293,000.00 |
| 22 | 5/14/09 | $95,200.00 |
| 23 | 7/13/09 | $625,000.00 |
| 24 | 8/11/09 | $992,000.00 |
| 25 | 10/1/09 | $740,000.00 |
|  | sub-total | $4,343,200.00 |
| 26* | TBD | $2,800,000.00 |
|  | cumulative total | $7,143,200.00 |

**Term and Interest:** The date of maturity of the note as well as the accumulated interest payments shall be payable upon closing of the Court Matter. An itemization of loan transfers and respective dates is listed above along with the Anticipated Funds Transfer.

**Security:** This Note is secured by Victoria Jane Andreae's spousal beneficial rights, as awarded in the Court Matter.

**Default-Waiver-Acceleration:** In the event of default on this Note, Maker waives demand, presentment of payment, protest, notice of protest, dishonor and any defense by reason of any extension of time or other indulgence granted by the Holder of this Note, and agrees that, if any payment on this Note is not made when due, the Holder shall have the right to accelerate and make the entire unpaid balance of principal and interest immediately due and payable. Default is defined as:

    a.    Failure to make any payment when due under the terms of this Note;
    b.    The violation of any other term, condition or promise of this Note.

2 of 3

**Costs:** If the holder of this Note incurs any costs in the collection or enforcement of this No including costs of filing suit and reasonable attorney fees, Maker agrees to pay such costs.

**Severability:** In case any provision in the Note shall be invalid, illegal, or unenforceable, validity, legality and enforceability of the remaining provisions shall not in any way be aff or impaired thereby.

**Governing Law:** This note shall be governed by and construed and interpreted in accor with the laws of the State of California.

**Signatures:**

By: _____        DATED: February _18_, 2010.
Glen Tobias
for: Alderbarron Management Company and acting in his
capacity as Victoria Jane Andreae, Attorney-In-Fact

By: _____        DATED: February _7_, 2010.
Victoria Jane Andreae

3 of 3