UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| JAMES BLACKMON, et al. | No. C 11-02853 SBA (LB) |
| Plaintiffs,<br>v.<br>GLENN TOBIAS, et al.,<br>Defendants. | **ORDER GRANTING PLAINTIFF'S MOTION FOR A WRIT OF ATTACHMENT**<br><br>[Re: ECF No. 22] |

# I. INTRODUCTION

In this action, which is currently pending before Judge Armstrong, James Blackmon and John Gray (collectively, "Plaintiffs") sued Glenn Tobias, Aldebarron Management Company, Infinity Entertainment, Inc., and Innerplay Entertainment (hereinafter, the "Tobias Defendants") as well as Jane Andreae and Enchanted Success (hereinafter, "Andreae Defendants") (collectively, "Defendants"), alleging numerous contract- and fraud-based claims related to several loans Plaintiffs made to Defendants. Complaint, ECF No. 1.[1] Mr. Gray filed a motion for a writ of attachment, and Judge Armstrong referred the motion to the undersigned. Application for Writ of Attachment, ECF No. 4; Notice of Motion for Writ of Attachment, ECF No. 22; Referral, ECF No. 29.[2] Upon

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[2] Although the notice of motion states that it is "Plaintiffs" who seek relief, *see* Notice of Motion for Writ of Attachment, ECF No. 22 at 1, 2, it is clear from the original application for writ

C 11-02853 LB

consideration of the papers submitted and the arguments of counsel during a hearing on February 16, 2012, and as explained below, the court GRANTS Mr. Gray's motion.[3]

## II. BACKGROUND

On June 10, 2011, Plaintiffs filed a complaint against Defendants alleging the following claims: (1) fraud (intentional misrepresentation); (2) fraud (false promise); (3) fraud in the inducement; (4) conversion; (5) breach of oral, written, and implied-in-fact contract with Mr. Gray; (6) breach of written contract (promissory note) with Mr. Gray; (7) breach of oral, written, and implied-in-fact contract with Mr. Blackmon; (8) violation of § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. § 1962(c); (9) conspiracy to violate Civil RICO; (10) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (11) imposition of constructive and/or resulting trust; (12) unjust enrichment; (13) injunctive relief; and (14) accounting. Complaint, ECF No. 1. Plaintiffs' ninth and tenth Civil RICO-based claims are federal law ones, while the rest are state law claims.

For purposes of this motion, Plaintiffs' complaint can be summarized as follows: In 2005, Mr. Blackmon was introduced to Ms. Andreae by a mutual friend. *Id*. at 6, ¶ 21. In early 2007, that friend told Mr. Blackmon that Ms. Andreae was in line to inherit approximately $1 billion because her wealthy husband died. *Id*., ¶ 22. Her inheritance, though, was the subject of probate proceedings in Switzerland, and her advisor, Mr. Tobias, was working to resolve those issues. *Id*. at 6-7, ¶¶ 22-23. That friend also told Mr. Blackmon that he (the friend) was supporting Ms. Andreae financially while the probate proceedings were ongoing and that he (the friend) would receive $35 million of the inheritance for his efforts. *Id*.

Mr. Blackmon thereafter traveled to New Mexico, where Ms. Andreae lived, and she confirmed

---

of attachment and the subsequent briefs that it is really Mr. Gray who seeks the writ of attachment. *See* Application for Writ of Attachment, ECF No. 4 at 1; Memo, ECF No. 5 at 2-3; Reply, ECF No. 52 at 3 n.3.

[3] The court previously set this matter for hearing on April 5, 2012. In light of the discussion at the February 16, 2012 telephonic hearing, and pursuant to Civil Local Rule 7-1(b), the court finds that this matter is suitable for determination without further oral argument and vacates the April 5, 2012 hearing.

the above story. *Id*., ¶ 23. She also told Mr. Blackmon that if he would support her financially as well, he, too, would be paid "millions." *Id*. Mr. Blackmon also spoke with Mr. Tobias over telephone. and Mr. Tobias confirmed the circumstances surrounding Ms. Andreae's inheritance and told Mr. Blackmon that the probate proceedings was about to be concluded in her favor. *Id*. at 7, ¶ 24. Based on these representations, Mr. Blackmon spent about five months living in New Mexico and supporting Ms. Andreae financially. He paid for her living expenses, her Swiss legal expenses, and to support other members of her "team." *Id*., ¶ 25. In reliance upon Defendants' representations, from July 2007 through December 2009, Mr. Blackmon paid $802,793.49 to or on behalf of Defendants. *Id*. at 8-9, ¶ 27. These payments were made at multiple times and into several bank accounts. *Id*.

In January 2008, Mr. Gray learned of Ms. Andreae's circumstances and her arrangement with Mr. Blackmon. *Id*. at 9, ¶ 28. Upon representations by Mr. Tobias and others that he would be repaid for any loans made, Mr. Gray began to make payments to Mr. Tobias to help finance the Swiss proceedings. *Id*. at 9-10, ¶¶ 28-32. Mr. Gray later was introduced to Ms. Andreae, who reiterated that Mr. Tobias's representations. *Id*. at 10-11, ¶¶ 33-34. All told, by October 1, 2009, Mr. Gray had made payments of $4,612,700 to Mr. Tobias via the bank account for Mr. Tobias's company, Aldebarron. *Id*. at 9-15, ¶¶ 29-48. He also made payments to Ms. Andreae. *Id*. at 15-16, ¶ 49.

Despite these payments, Ms. Andreae and Mr. Tobias continued to request more money from Mr. Gray. *Id*. at 16-17, ¶¶ 50-51. In response, Mr. Gray requested a promissory note that documented the total amount of loans he made to that point. *Id*. at 17, ¶¶ 52-53. The resulting promissory note included most (but not all) of his prior payments (totaling $4,343,200) as well as $2.8 million more that Ms. Andreae and Mr. Tobias requested, and promised to repay all of it at 10% interest upon the conclusion of the Swiss probate proceedings. *Id*., ¶ 53.

Throughout this entire time, Ms. Andreae and Mr. Tobias updated Mr. Blackmon and Mr. Gray on the Swiss probate proceedings. At several points, Ms. Andreae and Mr. Tobias stated that the proceedings hit various snags that delayed the proceedings' resolution (and thus delayed the repayment of Mr. Blackmon's and Mr. Gray's payments). *Id*. at 11-18, ¶¶ 35-47, 50-51, 54-55.

C 11-02853 LB

3

1    Because of these delays, Mr. Gray retained a private investigator. *Id*. at 18, ¶ 57. Upon
2 investigation, the investigator determined that Ms. Andreae's and Mr. Tobias's representations were
3 false: Ms. Andreae was not in line to inherit roughly $1 billion; there were no Swiss probate
4 proceedings; and Ms. Andreae's and Mr. Tobias's excuses for not repaying Plaintiffs' were made-
5 up. *Id*. at 18-19, ¶¶ 57-58.
6    Upon learning of the investigator's findings, Plaintiffs stopped making payments to Ms. Andreae
7 and Mr. Tobias. *Id*. at 19, ¶ 61. Moreover, Mr. Blackmon and Mr. Gray were never repaid for any
8 payments they made. *Id*.
9    On June 10, 2011, Plaintiffs filed the instant action. Three days later, Mr. Gray *ex parte* sought a
10 writ of attachment. Application for Writ of Attachment, ECF No. 4. He sought to have attached
11 $6,111,834, which, according to him, is comprised of $4,612,700 in damages, $999,134 in
12 prejudgment interest, and estimated attorney's fees and costs of $500,000. Id. at 2; Memo, ECF No.
13 5 at 18. Judge Armstrong denied the motion without prejudice. 6/16/2011 Order, ECF No. 12.
14 Accordingly, Mr. Gray was free to file a noticed motion for the same relief, and, about five weeks
15 later, he did so, requesting that the same amount be attached. Motion for Writ of Attachment, ECF
16 No. 22 (incorporating his original Application for Writ of Attachment and his Memo and
17 declarations in support of it). Judge Armstrong then referred the motion to the undersigned for a
18 decision. Referral, ECF No. 29. Defendants opposed the motion, and it now has been fully briefed.
19 *See* Memo, ECF No. 5; Opposition, ECF No. 37; Joinder in Opposition, ECF No. 39; Reply, ECF
20 No. 52; Sur-Reply, ECF No. 68; Response, ECF No. 69.[4] The court heard oral argument from the
21 parties at a hearing on February 16, 2012. Minute Entry, ECF No. 98.

### III. LEGAL STANDARD

23   Federal Rule of Civil Procedure 64(a) provides that "every remedy is available that, under the
24 law of the state where the court is located, provides for seizing a person or property to secure

---

[4] The Tobias Defendants and the Andreae Defendants also filed motions to dismiss in August 2011. Tobias Defendants' Motion to Dismiss, ECF No. 30; Andreae Defendants' Motion to Dismiss, ECF No. 33. These motions also are fully briefed and are set to be heard by Judge Armstrong on April 17, 2012. 1/10/2012 Order, ECF No. 92; Case Management Order, ECF No. 101.

satisfaction of the potential judgment." These remedies include a writ of attachment. Fed. R. Civ. P. 64(b); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 7 of Alameda County*, 415 U.S. 423, 436 n.10 (1974) (effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered)

The burden is on the plaintiff to establish grounds for attachment. *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1116 (1985). In that regard, California Civil Procedure Code § 484. 090(a) provides that a court shall issue a writ of attachment if it finds each of the following: (1) the claim upon which the attachment is based is a claim upon which an attachment may be issued; (2) the party seeking the attachment has established the probable viability of the claim upon which attachment is based; (3) the attachment is sought only for the purpose of recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment amounts to greater than zero. If, in addition to the finding required in subsection (a), the court finds that the defendant fails to prove that the property at issue is exempt from attachment, the court shall order that the writ of attachment be issued. Cal. Civ. Proc. Code § 484. 090(b). Before issuance of a writ of attachment can occur, however, the plaintiff must file an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action. Cal. Civ. Proc. Code § 489.210.

## IV. DISCUSSION

As California Code of Civil Procedure §§ 484.090(a) sets forth the applicable requirements that Plaintiffs must meet, each of them are addressed in turn below.[5]

A. Claim upon which Attachment May be Issued

An attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a).

---

[5] In neither their opposition nor their sur-reply did Defendants attempt to argue that any property was exempt from attachment under California Code of Civil Procedure § 484.090(b). Thus, the court need not address that issue here.

1   Attachment is permitted on unsecured claims or claims secured by personal property, but not on
2   claims secured by real property. Cal. Civ. Proc. Code § 483.010(b). Attachment lies on any claim
3   against a partnership or corporation or on claims against individuals that arise out of the conduct by
4   the individual of a trade, business, or profession. Cal. Civ. Proc. Code § 483 .010(a) & (c); *see*
5   *Koninklijke Phillips Electronics N.V. v. International Disc. Manufacturers*, 2006 WL 4532985 *4
6   (C.D. Cal., May 16, 2006). Thus, attachment is proper in a case based on an implied contract,
7   whether implied in fact or implied in law. *McCall v. Superior Court*, 1 Cal. 2d 527, 531-532 (1934);
8   *Laundry v. Marshall*, 243 Cal. App. 2d 170, 175 (1966).

9   Several of these requirements are easily met and are not challenged by Defendants. Mr. Gray's
10  motion is based on Defendants' alleged breach of their written, oral, or implied-in-fact contract with
11  Mr. Gray and/or their breach of the promissory note with Mr. Gray. *See* Memo, ECF No. 5 at 16.
12  The amount of the claims is readily determinable from the payments made and the promissory note,
13  and the related damages are greater than $499. *See id*. at 18. And Mr. Gray's claims are unsecured.
14  *See* Promissory Note, ECF No. 1 at 38-40.

15  The issue, then, is whether attachment is appropriate against these particular Defendants. For the
16  entity Defendants (Aldebarron Management Company; Infinity Entertainment, Inc.; Innerplay
17  Entertainment; and Enchanted Success), the answer is simple. As each of these Defendants is a
18  business entity, attachment of their assets is appropriate. Cal. Civ. Proc. Code § 483 .010(c); *see*
19  *Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson*, 197 Cal. App. 3d 1, 4 (1987) ("Because the
20  trust is not a "natural person," section 483.010, subdivision (c) is inapplicable.").[6]

21  For the individual defendants, the answer is not quite as simple. California Code of Civil
22  Procedure§ 483.010(c) provides:

23  > If the action is against a defendant who is a natural person, an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession. An attachment may not be issued on a claim against a defendant who is a natural person if the claim is based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where the property sold or leased, or licensed for use, the services furnished, or the money loaned was used by the defendant primarily for personal, family, or household

---

[6] The court notes that Defendants does not challenge the attachment of any entity Defendants' assets in their opposition or sur-reply.

C 11-02853 LB

6

UNITED STATES DISTRICT COURT
For the Northern District of California

purposes.

In other words, if Mr. Gray's contract-based claims do not arise out of conduct related to a "trade, business, or profession" and if the money was used "primarily for personal, family, or household purposes," then attachment of Ms. Andreae's and Mr. Tobias's assets is not appropriate. *See id.*

Defendants argue that the money Mr. Gray paid did not relate to "commercial" purposes, but the "related to business" requirement for attachment is broader than they suggest. *See* Sur-Reply, ECF No. 68 at 2-3.[7] As one California court remarked in relation to a former version of the statute, the requirement embraces any "frequent or continuous" activity "engaged in for profit or for gain." *Advance Transformer Co. v. Superior Court*, 44 Cal. App. 3d 127, 134, 139 (1974) (citing Cal. Civ. Proc. Code § 537.2 (repealed 1972)). This is because the "related to business" requirement exists to "to permit the continuance of existing credit practices whereby unsecured credit was feasibly based upon the creditor's ability to prevent dissipation of the debtor's assets pending trial of an action to collect" but also to curtail "the use of attachment procedures in consumer cases." *Id.* at 141. Ms. Andreae's and Mr. Tobias's acts, as alleged and on the evidence submitted, can perhaps best be described as continuing attempts to receive credit for use in probate proceedings. *See*, *e.g.*, Promissory Note, ECF No. 1 at 38 ("The funds advanced as the date of the agreement were requested by [Mr. Tobias, as representative of Alderbarron, and Ms. Andreae] for the purpose of supporting the probate estate settlement of Peter Christoph Andreae, now subject to open arbitration in the Swiss high court (Zurich) for the spousal benefit of [Ms. Andreae] [].").

Mr. Gray's claims, then, are ones for which attachment may be issued, and the attachment may apply to Defendants' assets. *See Advance Transformer*, 44 Cal. App. 3d at 144. This satisfies the requirement to do so under California Code of Civil Procedure § 484.090(a)(1).

---

[7] In their opposition, Defendants also argued that Plaintiffs gave Ms. Andreae "cash for living expenses" and paid her "credit card expenses, rent, and other expenses" – in other words, money used primarily for personal, family, or household purposes. Opposition, ECF No. 37 at 8-9. Mr. Gray, though, pointed out in his reply that he did not make those payments and they are inapposite to his motion. Reply, ECF No. 52 at 5-6. Defendants appear to have abandoned this argument in their sur-reply, but even if they had not, Mr. Gray correctly distinguished those payments.

C 11-02853 LB
7

B.  Probable Validity of Claim

"A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 481.190.  Because attachment is only for contract-based claims, and because Mr. Gray's motion is based on the Plaintiffs' breach of contract claims, Mr. Gray contends that the court should look at the probable validity of those claims, and not to the probable validity of the Civil RICO claim as Defendants suggest.

Mr. Gray is correct.  California Code of Civil Procedure§ 484. 090(a) provides that the party seeking the attachment must establish "the probable viability *of the claim upon which attachment is based*." Cal. Civ. Proc. Code § 484.090(a)(2).  As stated above, Mr. Gray's motion is based on the contract-based claims, not the Civil RICO one, so he need only establish the probable validity of the contract-based ones.

And in that regard, Mr. Gray has met his burden.  Through competent declarations and documents, he puts forth evidence that Defendants entered into an implied-in-fact agreement to repay the money that Mr. Gray sent to them and that Ms. Andreae and Mr. Tobias later signed a promissory note more formally agreeing to pay back the loans at 10% interest.  *See* Plaintiffs' Response to Sur-Reply, ECF No. 69 at 5-9 (summarizing evidence submitted).[8]  For example, Mr. Gray submitted declarations describing Ms. Andreae's and Mr. Tobias's representations that Ms. Andreae needed funds to pay for probate proceedings in Switzerland and that Mr. Gray would be repaid for amounts he gave them.  *See generally* Gray Declaration, ECF No. 6; *see also id*., Exh. A (email from Mr. Tobias describing first payment as a loan).  Based on those representations, Mr. Gray transferred, pursuant to Mr. Tobias's instructions, at least $4,612,700 in funds to Alderbarron's bank account.  Gray Declaration, ECF No. 6 at 11, ¶ 31; *id*., Exhs. B, D, E.  Eventually, Ms. Andreae and Mr. Tobias (on behalf of Aldebarron) signed a promissory note that obligated them to repay Mr. Gray.  Promissory Note, ECF No. 1 at 38-40; Gray Declaration, ECF No. 6 at 11, ¶ 31; Supplemental Gray Declaration, ECF No. 70 at 6, ¶ 6.  Ms. Andreae and Mr. Tobias have admitted

---

[8] Although it is not their burden, the court notes that Defendants did not move to dismiss Plaintiffs' contract-based claims; rather, they only moved to dismiss Plaintiffs' Civil RICO and UCL claims.  *See* Motion to Dismiss, ECF No. 30.

C 11-02853 LB

8

that they signed the promissory note. Supplemental Andreae Declaration, ECF No. 68-2 at 2, ¶ 7; Supplemental Tobias Declaration, ECF No. 68-1 at 2, ¶ 7. Nevertheless, none of the money has been repaid. Gray Declaration, ECF No. 4 at 14, ¶ 44.

In their sur-reply, Ms. Andreae and Mr. Tobias contend that they never entered into a contract – whether written, oral, or implied-in-fact. Sur-Reply, ECF No. 68 at 3-4. Rather, they suggest that any "contract" was Mr. Gray's attempt to deceive his wife about where the money went. *Id*. The problem, though, is that the "evidence" they submit in support of their contention consists of only two, vague emails that do not even come close to sufficiently showing this. *See* Supplemental Andreae Declaration, ECF No. 68-2 at 4-5. Their argument is unpersuasive.

Therefore, at this early stage of the litigation, the court finds that Mr. Gray has established the probable validity of Plaintiffs' contract-based claims. This satisfies the requirement to do so under California Code of Civil Procedure § 484.090(a)(2).

C. Attachment Sought Only for Purpose of Recovery

Mr. Gray has declared that the attachment is not sought for a purpose other than the recovery of the amounts owed to him on the contracts that are alleged to be at issue in this case. Application for Writ, ECF No. 4 at, ¶ 4. This satisfies the requirement under California Code of Civil Procedure § 484.090(a)(3).[9]

D. Amount Sought to be Attached Is Greater than Zero

The amount Mr. Gray requests be attached is $6,111,834, which, according to him, is comprised of $4,612,700 in damages, $999,134 in prejudgment interest, and estimated attorney's fees and costs of $500,000. Application for Writ of Attachment, ECF No. 4 at 2; Memo, ECF No. 5 at 18; Gray Declaration, ECF No. 6 at 11, ¶ 31, Exhs. B, D, E. Defendants do not challenge the amount Mr. Gray seeks to have attached. This satisfies the requirement under California Code of Civil

---

[9] Defendants suggest that Mr. Gray seeks the attachment for a purpose other than for the purpose of recovery: "While Plaintiff Gray claims he is owed money under the promissory note[] and other oral agreements, Defendants deny that those 'agreements' are anything other than to support his 'cover' to deceive his wife." Sur-Reply, ECF No. 68 at 4. As the court pointed out above, however, Defendants present no convincing evidence for this theory. Response, ECF No. 69 at 7-9.

Procedure § 484.090(a)(4).

## V. CONCLUSION

Based on the foregoing, Mr. Gray's motion for a writ of attachment is GRANTED. The following process shall apply:

1. Mr. Gray has the right to attach property of all six Defendants in this action (Glenn Tobias; Aldebarron Management Company; Infinity Entertainment, Inc.; Innerplay Entertainment; Jane Andreae; and Enchanted Success) in the amount of $6,111,834.

2. Mr. Gray shall submit proposed Right to Attach Order and Order for Issuance of Writ of Attachment After Hearing forms (California Judicial Counsel Form AT-120) for each Defendant, based on the information included in his original Application for Writ of Attachment (ECF No. 4).

2. Pursuant to California Civil Procedure Code §§ 489.210 and 489.220, Mr. Gray shall make a cash deposit of $10,000 for each Defendant to the Clerk of the Court.

3. Upon receipt of the deposits, the Clerk of the Court will issue Writs of Attachment (California Judicial Counsel Form AT-135) for each Defendant.

This disposes of ECF No. 22.

**IT IS SO ORDERED.**

Dated: March 30, 2012

_____
LAUREL BEELER
United States Magistrate Judge